UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BARRY S. ZEFF,

          Plaintiff

VS.

UNUMPROVIDENT CORPORATION; and
UNUM LIFE INSURANCE COMPANY OF
AMERICA,

          Defendants

MAGISTRATE JUDGE___LPC___    **COMPLAINT**

**PARTIES**

# 04 CV 12453 MEL

**CIVIL ACTION
NO.**

RECEIPT #_____
AMOUNT $____150.00____
SUMMONS ISSUED____2____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK.____M.P.____
DATE____11/19/2004____

1.    The Plaintiff, BARRY S. ZEFF, is an adult individual, born January 30, 1949, and is a resident of the Town of Peabody, Essex County, Massachusetts.

2.    The Defendant UNUMPROVIDENT CORPORATION is a business corporation organized under the laws of the State of Delaware, engaged in the business of insurance, with a principal office in the City of Chattanooga, Tennessee, and is registered with the Secretary of the Commonwealth of Massachusetts as doing business in Massachusetts, with a local agent, CT Corporation System, in the City of Boston, Massachusetts.

3.    The Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA is a wholly owned subsidiary of UNUMPROVIDENT CORPORATION, engaged in the business of insurance, with a principal office in the City of Chattanooga, Tennessee, and is registered and/or licensed with the Massachusetts Division of Insurance as producing life, accident & health insurance in Massachusetts, NAIC Registration No. 62235.

## DECLARATION OF FACTS

4.    At all times relevant, prior to and including April 15, 2002, the Plaintiff was an employee of Scott-Wayne Associates, of Topsfield, Massachusetts, working as an executive recruiter, and was earning $9,711 per week, average base pay before taxes for the 12-month period just prior to that date.

5.    As of April 15, 2002, and at all other times relevant, the Defendants, UNUM-PROVIDENT CORPORATION and UNUM LIFE INSURANCE COMPANY OF AMERICA, were engaged in the business of insurance in the Commonwealth of Massachusetts, and were providing group Long Term Disability (LTD) coverage and processing claims for the employees of the Jeffrey Staffing Group, a consortium which includes Plaintiff's employer Scott-Wayne Associates, under Policy No. 319040-003.  (A true copy of the employee Plan Booklet for said LTD group policy is attached hereto as Exhibit A).

6.    The Jeffrey Staffing Group LTD policy was part of an employee-benefit plan as that term is used in 29 U.S.C. Sect. 1001, et seq., known as the Employee Retirement Income Security Act (ERISA), and the administration, interpretation and enforcement of said LTD policy are subject to the terms of the ERISA statute.

7.    As of April 15, 2002, and at all other times relevant, the Plaintiff Barry S. Zeff was an eligible employee under the aforesaid LTD group policy.

8.    The aforesaid employee Plan Booklet (Exhibit A) accurately sets forth the rights and obligations of both the Plaintiff and the Defendants under the long term disability coverage provided by Defendants to the employees of Scott-Wayne Associates.

9.      The disability coverage provided by Defendants under said LTD policy included an own-occupation disability benefit for the first 24 months of disability preventing the employee from performing the material duties of his regular occupation, subject to a 180-day elimination period, and a continuing benefit after such 24-months of own-occupation disability for disability preventing the employee from performing any occupation for which he may be reasonably qualified by training, education or experience.

10.     The employee's LTD benefit under the Jeffrey Staffing Group policy is computed at 60 percent of basic monthly earnings, subject to an offset for other income benefits received which is not applicable in this case.

11.     An eligible employee under the Jeffrey Staffing Group LTD plan is entitled to benefits after the end of the elimination period upon the submission of proof to the Defendants that he is disabled due to sickness or injury and requires the regular attendance of a physician; and the Defendants are given no discretionary authority or final authority under said LTD plan to determine the sufficiency of such proof or to interpret the language of the plan.

12.     On or about April 15, 2002, the Plaintiff became totally disabled by reason of severe illnesses which included myopericarditis and fibromyalgia, with symptoms including chest pain, muscle pain, dizziness, dyspnea, fatigue, lightheadedness and anxiety, preventing him from performing the material duties of his regular occupation or any other occupation for which he was qualified by training, education or experience.

13. Because of such disabling illnesses, the Plaintiff stopped working as of April 16, 2002, on the advice of his treating physicians and he has at all times relevant remained under the regular attendance of said physicians.

14. On or about October 10, 2002, Plaintiff filed his claim for LTD benefits under the Jeffrey Staffing Group policy, on a form provided by the Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA. (A true copy of that claim form is attached hereto as Exhibit B).

15. In support of his claim, the Plaintiff submitted to the Defendants his Attending Physician's Statement from Kenneth R. Rice, M.D., which confirmed Plaintiff's disability due to pericarditis and chest pain. (A true copy of that attending physician's statement is attached hereto as Exhibit C).

16. In further support of his claim, the Plaintiff has submitted the records and reports of Dr. Rice and of his other attending physicians who confirm the diagnoses of pericarditis and fibromyalgia and their disabling effects which have prevented Plaintiff from performing the material duties of his regular occupation as an executive recruiter.

17. On January 14, 2003, the Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA, on letterhead reading UNUMPROVIDENT, denied Plaintiff's claim for LTD benefits under the Jeffrey Staffing Group LTD policy. Said denial notice stated that any administrative appeal from such denial must be submitted within 180 days to UnumProvident.

4

18.  On July 10, 2003, Plaintiff submitted a timely written appeal through counsel to the Defendant, identified as UnumProvident, as directed by the denial notice of January 14, 2003.

19.  In support of such written appeal, the Plaintiff submitted to Defendants further records and reports from his attending physicians which confirmed the diagnoses of pericarditis and fibromyalgia and their disabling effects.

20.  The record as developed by the Defendants establishes that Plaintiff was totally disabled from performing the material duties of his regular occupation, by reason of illnesses including pericarditis and fibromyalgia, for which he was under the regular attendance of his physicians, from April 16, 2002, through August 4, 2003, when he returned to work full-time; and there is no substantial medical evidence to the contrary from any attending or examining physician.

21.  By reason of such total disability from his regular occupation, Plaintiff is entitled to a closed period of monthly benefits under the Jeffrey Staffing Group LTD policy from the end of the elimination period on October 12, 2002, through his return to full-time work on August 4, 2002, in the amount of $56,915.00 for 42 weeks of disability at 60 percent of his base pay.

22.  On December 18, 2003, the Defendants issued written notice of their denial of Plaintiff's administrative appeal, which was a final denial of the claim and said final denial acknowledged that Plaintiff has the right to bring a civil suit under Section 502(a) of the ERISA statute.

23.   Plaintiff has complied with all procedures stated in the Jeffrey Staffing Group LTD plan booklet for presenting his claim, and has complied with all specific requests from the Defendants for information on this claim.

24.   Defendants' denial of Plaintiff's LTD claim was contrary to the terms of the Jeffrey Staffing Group LTD policy and was contrary to the competent medical and vocational evidence which establishes Plaintiff's total disability from performing the material duties of his regular occupation from April 16, 2002, through August 4, 2003.

25.   Defendants' denial of Plaintiff's LTD claim was not based on the competent and substantial medical and vocational evidence available on the claim, and was contrary thereto.

26.   Defendants' denial of Plaintiff's LTD claim was made without conducting a reasonable and thorough investigation, based upon all available information as to Plaintiff's medical and vocational status.

27.   Defendant's denial of Plaintiff's LTD claim was arbitrary and capricious, and it was unreasonable as contrary to the terms of the Jeffrey Staffing Group LTD Plan and contrary to the provisions of 29 U.S.C. Sect. 1133.

## COUNT I:  BREACH OF CONTRACT

28.   By reason of the matters stated in Paragraphs 1 through 27, the Defendants have breached their contractual obligations to the Plaintiff under the Jeffrey Staffing Group LTD plan, and they are liable therefor, as provided by 29 U.S.C. Sect. 1132(a)(1)(B), for all benefits payable to Plaintiff for the period October 12, 2002, through August 4, 2003, in the amount of $56,915.00, plus interest, costs and attorneys fees.

## COUNT II:  WRONGFUL CLAIM DENIAL UNDER ERISA

29.    By reason of the matters stated in Paragraphs 1 through 27, the Defendants have

wrongfully denied LTD benefits to Plaintiff under the Jeffrey Staffing Group LTD

plan, in violation of ERISA, 29 U.S.C. Sect. 1132(a)(1)(B) and Sect. 1133; and

Defendants are liable to Plaintiff therefore in the amount of $56,915.00 for all

benefits payable under said LTD plan for the period from October 12, 2002,

through August 4, 2003, plus interest, costs and attorneys fees.

## COUNT III:  ARBITRARY & CAPRICIOUS CLAIM DENIAL

30.    By reason of the matters stated in Paragraphs 1 through 27, the Defendants have

acted in an arbitrary and capricious manner, unreasonably denying Plaintiff's claim

for benefits under the Jeffrey Staffing Group LTD plan, contrary to the substantial

medical evidence which establishes his total disability from April 16, 2002, through

August 4, 2003; and Defendants are liable therefore, as provided by 29 U.S.C. Sect.

1132(a)(1)(B), for all LTD benefits payable under said plan for such period, in the

amount of $56,915.00, plus interest, costs and attorneys fees.

### WHEREFORE, Plaintiff demands judgment and relief as follows:

**First,** on Counts I and II, that the Court make *de novo* findings that Plaintiff was disabled

under the Jeffrey Staffing Group LTD plan from April 16, 2002, through August 4, 2003,

with judgment for monetary damages against the Defendants, UNUMPROVIDENT

CORPORATION and UNUM LIFE INSURANCE COMPANY OF AMERICA, or either of

them,  in the amount of $56,915.00, plus interest, costs of the action  and attorney's fees;

7

**Second,** in the alternative on Count III, that the Court make findings that the Defendants' denial of Plaintiff's LTD claim was arbitrary and capricious, unreasonable and contrary to the substantial evidence of record, with judgment for monetary damages against the Defendants, UNUMPROVIDENT CORPORATION and UNUM LIFE INSURANCE COMPANY OF AMERICA, or either of them, in the amount of $56,915.00, plus interest, costs of the action and attorneys fees.

**Third,** in the alternative on Count III, that the Court make findings that the Defendants' denial of Plaintiff's LTD claim was arbitrary and capricious, unreasonable and not supported by the substantial evidence of record, with an order that the matter be remanded to the Defendants, UNUMPROVIDENT CORPORATION and UNUM PROVIDENT LIFE INSURANCE COMPANY, or either of them, for further review and determination of Plaintiff's claim under the Jeffrey Staffing Group LTD plan, with costs of the action and attorney's fees; and

**Fourth,** that the Court grant to Plaintiff such other relief as may be available to him on the facts as pleaded herein.

Dated:   November 17, 2004

For the Plaintiff,

Richard K. Latimer
Kistin Babitsky Latimer & Beitman
Box 590, 13 Falmouth Heights Road
Falmouth, MA  02541
(508) 540-1606
BBO #287840

8



UNUM.

TO:

JEFFREY STAFFING GROUP

### Your Group Long Term Disability Plan

Policy No. 319040-003

Underwritten by Unum Life Insurance Company of America

12-2001

# TABLE OF CONTENTS

CERTIFICATE OF COVERAGE . . . . . . . . . . . . . . . . . . . . . . . 1

PLAN OUTLINE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TERMS YOU SHOULD KNOW . . . . . . . . . . . . . . . . . . . . . . 4

ENROLLMENT AND DATE INSURANCE STARTS . . . . . . . . . . . . . 8

DISABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

RECURRENT DISABILITY . . . . . . . . . . . . . . . . . . . . . . . 13

SURVIVOR BENEFIT . . . . . . . . . . . . . . . . . . . . . . . . . 14

GENERAL EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . 15

PRE-EXISTING CONDITION EXCLUSION . . . . . . . . . . . . . . . 15

MENTAL ILLNESS LIMITATION . . . . . . . . . . . . . . . . . . . . 16

TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SOME GENERAL INFORMATION TO KNOW . . . . . . . . . . . . . . . 18

LC.IND

## CERTIFICATE OF COVERAGE

UNUM Life Insurance Company of America (referred to as "we," "our" and "us") welcomes your employer as a client.

This is your certificate of coverage as long as you are eligible for insurance and you become and remain insured. Keep it in a safe place.

A few words about this certificate of coverage.....

We have written it in plain English. But a few terms and provisions are written as required by insurance law. You will want to read it carefully. If you have any questions about any terms and provisions, please contact the Insurance Administrator at your work location or write to our claims paying office. We will assist you in any way we can to help you understand your benefits.

Also, if the terms of your certificate of coverage and the policy differ, the policy will govern. Your coverage may be terminated or modified in whole or in part under the terms and provisions of the policy.

*Harold Chandler*

President

## PLAN OUTLINE

### Description of Eligible Classes

All Employees

### Amount of Insurance

- 60% (benefit percentage) of basic monthly earnings not to exceed the maximum monthly benefit, less other income benefits.

  Note: This benefit is subject to reductions for earnings as provided in the section titled "How is the benefit figured?"

- The maximum monthly benefit is $12,500.
- The minimum monthly benefit is the greater of:
  1. $50.00; or
  2. 10% of the monthly benefit before deductions for other income benefits.

### Maximum Benefit Period

| Age at Disability Less than age 60 | Maximum Benefit Period To age 65 but not less than 60 months |
|---|---|
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

**Elimination Period:** 180 days

**Minimum Requirement for Active Employment:** 30 hours per week

### Definition of Basic Monthly Earnings

"Basic monthly earnings" means your monthly rate of earnings from the employer in effect just prior to the date disability begins. It includes earnings from salary, bonuses and overtime pay, but not other extra compensation.

Salary will be averaged for the lesser of:

1. the 12 month period of employment just prior to the date disability begins; or
2. the period of employment.

### Waiting Period:

- If you were in an eligible class on or before the policy effective date: None
- If you entered an eligible class after the policy effective date: None

### Contributions

The cost of your insurance is paid entirely by your employer.

LC.PO.2.1                2

**Change Effective**
Subject to the delayed effective date exceptions, changes in insurance take effect immediately.

## Continuation of Your Insurance During Certain Absences

| Type of Absence | Time Limit |
|---|---|
| Temporary Layoff or Leave of Absence | To the end of the policy month following the policy month in which the layoff or leave of absence begins. |

## TERMS YOU SHOULD KNOW

Many terms used in your certificate of coverage have special meanings. A list of these terms and meanings follows:

- "Active employment" means you must be working:
  1. for your employer on a permanent full-time basis and paid regular earnings;
  2. at least the minimum number of hours shown in the plan outline; and either
  3. at your employer's usual place of business; or
  4. at a location to which your employer's business requires you to travel.
- "Basic monthly earnings" - as defined in the plan outline.
- "Complications of pregnancy" means pregnancy complicated by concurrent disease or abnormal conditions significantly affecting usual medical management.
- "Disability" or "disabled" - see the end of these terms.
- "Disability benefits," when used with the term retirement plan, means money which:
  1. is payable under a retirement plan due to disability as defined in that plan; and
  2. does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the disability had not occurred. (If the payment does cause such a reduction, it will be deemed a retirement benefit as explained in this certificate of coverage.)
- "Eligibility date" means the date you become eligible for insurance after completing the waiting period shown in the plan outline.
- "Elimination period" means a period of consecutive days of disability for which no benefit is payable. The elimination period is shown in the plan outline and begins on the first day of disability.

  Note: If disability stops during the elimination period for any 30 (or less) days, then the disability will be treated as continuous. But days that you are not disabled will not count toward the elimination period.

- "Employer" means the policyholder and includes any division, any sub-sidiary or any affiliated company named in the policy.

- "Evidence of insurability" means a statement or proof of your medical history upon which we will determine your acceptance for insurance.

- "Gross monthly benefit" means your benefit amount before any reduction for other income benefits.

- "Home office" means UNUM Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122.

- "Indexed pre-disability earnings" means your basic monthly earnings in effect just prior to the date your disability began adjusted by 3% on the July 1st following one full calendar year during which you have been continuously disabled. These earnings will be adjusted each following July 1st to a maximum of 5 adjustments.

- "Injury" means bodily injury resulting directly from an accident and in-dependently of all other causes. The injury must occur and disability must begin while you are insured under the policy.

- "Monthly benefit" means the amount we will pay you when you are disa-bled.

- "Partial disability" and "partially disabled" - see the end of these terms.

- "Physician" means a person who is:

  1. operating within the scope of his license; and either
  2. licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
  3. legally qualified as a medical practitioner and required to be recog-nized, under the policy for insurance purposes, according to the in-surance statutes or the insurance regulations of the governing jurisdiction.

  It will not include you or your spouse, daughter, son, father, mother, sister or brother.

- "Retirement benefits", when used with the term retirement plan, means money which:

  1. is payable under a retirement plan either in a lump sum or in the form of periodic payments;
  2. does not represent contributions made by you (payments which represent your contributions are deemed to be received over your expected remaining life regardless of when such payments are actually received); and
  3. is payable upon:
     a. early or normal retirement; or
     b. disability if the payment does reduce the amount of money which would have been paid at the normal retirement age under the plan if the disability had not occurred.

- "Retirement plan" means a plan which provides your retirement benefits and which is not funded wholly by your contributions. The term shall not include a profit-sharing plan, a thrift plan, an individual retirement account (IRA), a tax sheltered annuity (TSA), a stock ownership plan, or a non-qualified plan of deferred compensation.

- "Sickness" means illness or disease. It includes pregnancy unless excluded in the General Exclusion section of this certificate of coverage. Disability must begin while you are insured under the policy.

- "Waiting period," as shown in the plan outline, means the continuous length of time you must serve in an eligible class to reach your eligibility date.

- "You" and "your" means you, the employee.

- "Disability" and "disabled" mean that because of injury or sickness:

  1. you cannot perform each of the material duties of your regular occupation; and

  2. after benefits have been paid for 24 months, you cannot perform each of the material duties of any gainful occupation for which you are reasonably fitted by training, education or experience.

- "Partial disability" and "partially disabled" mean that because of injury or sickness you, while unable to perform all the material duties of your regular occupation on a full-time basis, are:

  1. performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and

  2. currently earning at least 20% less per month than your indexed pre-disability earnings due to that same injury or sickness.

## ENROLLMENT AND DATE INSURANCE STARTS

**When can you enroll?**
You can enroll if you are:
1.  in active employment with your employer; and
2.  in a class eligible for insurance.

**When does insurance start?**
Insurance will start at 12:01 a.m. on the day determined as follows, but only if you enroll for insurance with us through your employer on a form satisfactory to us.

If you do not contribute toward the plan's cost, your insurance will start on your eligibility date.

But no initial, increased or additional insurance will apply to you if you are not in active employment on the effective date of such insurance because of a disability.  Such insurance will start for you on the day you return to active employment.

## DISABILITY

**When do disability benefits become payable?**
We will pay you a monthly benefit after the end of the elimination period when we receive proof that you:

1. are disabled due to sickness or injury; and

2. require the regular attendance of a physician.

**What conditions must be met for benefit payments to continue?**

We will pay you as long as you remain disabled and require the regular attendance of a physician. But we will not pay any longer than the maximum benefit period shown in the plan outline.

Also, you must give us proof of these facts, at your own expense, when we ask for it.

**When do disability benefits for partial disability become payable?**

When we receive proof that you are partially disabled within 31 days of the end of a period during which you received disability benefits we will pay a monthly benefit. The partial disability must result from the injury or sickness that caused disability.

**How is the benefit figured?**
To figure the amount of your monthly benefit:
1. Multiply your basic monthly earnings by the benefit percentage shown in the plan outline.
2. Take the lesser of:
   a. the amount figured in step 1; or
   b. the maximum monthly benefit shown in the plan outline; and then
3. Deduct other income benefits from this amount.

But, if you are earning more than 20% of your indexed pre-disability earnings in your regular occupation or another occupation, the following formula will be used to figure the monthly benefit.

$$(A \text{ divided by } B) \times C$$

A = Your "indexed pre-disability earnings" minus your monthly earnings received while you are disabled.
B = Your "indexed pre-disability earnings".
C = The benefit as figured above.
The benefit payable will never be less than the minimum monthly benefit shown in the plan outline.

**What are "other income benefits"?**
Other income benefits means those benefits as follows.
1. The amount for which you are eligible under:
   a. Workers' or Workmen's Compensation Law;
   b. occupational disease law; or
   c. any other act or law of like intent.
2. The amount of any disability income benefits for which you are eligible under any compulsory benefit act or law.

3. The amount of an., disability income benefits for w...ch you are eligible under:
   a. any other group insurance plan;
   b. any governmental retirement system as a result of your job with your employer.
4. The amount of disability benefits and/or retirement benefits you receive under your employer's retirement plan.
5. The amount of disability or retirement benefits under the United States Social Security Act, The Canada Pension Plan, or The Quebec Pension Plan, or any similar plan or act, as follows:
   a. disability benefits for which you are eligible; or
   b. retirement benefits you receive.

These other income benefits, except retirement benefits, must be payable as a result of the same disability for which we pay a benefit.

Item 5b will not apply to disabilities which begin after age 70 if you are already receiving Social Security retirement benefits while continuing to work beyond age 70.

Benefits under item 5.a above will be estimated if such benefits:
1. have not been awarded; and
2. have not been denied; or
3. have been denied and the denial is being appealed.

The monthly benefit will be reduced by the estimated amount. But, these benefits will not be estimated provided that you:
1. apply for benefits under item 5.a; and
2. request and sign our Agreement Concerning Benefits.

This agreement states that you promise to repay us any overpayment caused by an award received under item 5.a. If benefits have been estimated, the monthly benefit will be adjusted when we receive proof:
1.  of the amount awarded; or
2.  that benefits have been denied and the denial is not being appealed.
In the case of 2. directly above, a lump sum refund of the estimated amounts will be made.
"Law", "plan", or "act" means the initial enactment and all amendments.

**What happens if you receive increases in these other income benefits?**
After the first deduction for each of the other income benefits, we will not further reduce your monthly benefit due to any cost of living increases payable under these other income benefits.

**What if you receive a lump sum payment?**
We will prorate other income benefits which are paid in a lump sum on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over your expected lifetime as determined by us.

**When do these benefits cease?**
Disability benefits will cease on the earliest of:
1.  the date you are no longer disabled;
2.  the date you die;
3.  the end of the maximum benefit period;
4.  the date your current earnings exceed 80% of your indexed pre-disability earnings.

**Must premium payments be made when you are receiving benefits?**
No, we will waive premium payments during any period for which benefits are payable.

## RECURRENT DISABILITY

**What happens if you try to return to work and become disabled again?**
"Recurrent Disability" is a disability which is related to a prior disability for which you received a monthly benefit.

We will treat a recurrent disability as part of the prior disability if, after receiving disability benefits, you:
1.   return to your regular occupation on a full-time basis for less than six months; and
2.   perform all the material duties of your occupation.

Benefit payments will be subject to the terms of this plan for the prior disability.

If you return to your regular occupation on a full-time basis for six months or more, a recurrent disability will be treated as a new period of disability. You must complete another elimination period.

If you become eligible for coverage under any other group long term disability policy, this recurrent disability section will cease to apply to you.

## SURVIVOR BENEFIT

**What happens to your benefit if you die?**

We will pay a benefit to your eligible survivor when we receive proof that you died:

1. after disability had continued for 180 or more consecutive days; and
2. while receiving a monthly benefit.

The benefit will be an amount equal to three times your last monthly benefit.

If payment becomes due to your children, payment will be made to:

1. your children; or
2. a person named by us to receive payments on your children's behalf. This payment will be valid and effective against all claims by others re-presenting or claiming to represent your children.

"Eligible survivor" means your spouse, if living, otherwise your children under age 25.

"Last monthly benefit" means the monthly benefit we paid to you immediately prior to your death but not including any adjustment for earnings.

LC.BEN.5.8          14          2080000.010

## GENERAL EXCLUSIONS

**What disabilities aren't covered?**
We will not cover any disability due to:
1.  war, declared or undeclared, or any act of war;
2.  intentionally self-inflicted injuries;
3.  active participation in a riot.

## PRE-EXISTING CONDITION EXCLUSION

**Are there any other disabilities not covered?**
Yes, we will not cover any disability:
1.  caused by, contributed to by, or resulting from a pre-existing condition; and
2.  which begins in the first 12 months after your effective date.

"Pre-existing condition" means a sickness or injury for which you received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to your effective date.

## MENTAL ILLNESS LIMITATION

**Are benefits limited for mental illness?**

Benefits for disability due to mental illness will not exceed 24 months of monthly benefit payments unless you meet one of these situations.

1.  You are in a hospital or institution at the end of the 24-month period. We will pay the monthly benefit during the confinement.

    If you are still disabled when discharged, we will pay the monthly benefit for a recovery period of up to 90 days.

    If you become reconfined during the recovery period for at least 14 days in a row, we will pay benefits for the confinement and another recovery period up to 90 more days.

2.  You continue to be disabled and become confined:

    a.  after the 24-month period; and
    b.  for at least 14 days in a row.

    We will pay the monthly benefit during the confinement.

We will not pay the monthly benefit beyond the maximum benefit period.

"Hospital" or "institution" means facilities licensed to provide care and treatment for the condition causing your disability.

"Mental illness" means mental, nervous or emotional diseases or disorders of any type.

## TERMINATION

**When does your insurance terminate?**
You will cease to be insured on the earliest of the following dates:

1. the date the policy terminates;
2. the date you are no longer in an eligible class;
3. the date your class is no longer included for insurance;
4. the last day for which you made any required employee contribution;
5. the date employment terminates. Cessation of active employment will be deemed termination of employment, except:
    a. if you are disabled your insurance will be continued during:
        i. the elimination period; and
        ii. the period during which premium is being waived.
    b. your employer may continue your insurance by paying the required premium, subject to the following.
        i. Insurance may be continued for the time shown in the plan outline if you are:
            ai. temporarily laid off; or
            aii. given leave of absence.
        ii. The employer must act so as not to discriminate unfairly among employees in similar situations.

Benefit Extension: If you end employment, your insurance will be extended for 31 days. But if you become eligible for any other group long term disability insurance or any other arrangement, this extension will cease.

## SOME GENERAL INFORMATION TO KNOW

**When must we be notified of a claim?**
You must give us written notice of claim within 30 days of the date disability starts. If that is not possible, you must notify us as soon as you can.

When we receive your written notice of claim, we will send you our claim forms. If you do not receive the forms within 15 days after you sent the notice, you can send written proof of claim without waiting for the form.

**When does proof of claim have to be given?**
You must give us proof of claim no later than 90 days after the end of the elimination period.

If it is not possible for you to give proof within these time limits, it must be given as soon as reasonably possible. But you may not give proof later than one year after the time it is otherwise required.

You must give us proof of continued disability and regular attendance of a physician within 30 days of the date we request the proof.

The proof must cover:
1. the date disability started;
2. the cause of disability; and
3. how serious the disability is.

**When are claims paid?**
When we receive proof of claim, benefits payable under the policy will be paid monthly during any period for which we are liable.

**Who are claims paid to?**
All benefits are payable to you. But if a benefit is payable to your estate, or if you are a minor, or you are not competent, we have the right to pay up to $1,000 to any of your relatives whom we consider entitled. If we pay benefits in good faith to a relative, we will not have to pay such benefits again.

**What are our examination rights?**
We, at our expense, have the right and opportunity to have you examined by a physician or vocational expert of our choice to determine the extent of any sickness or injury for which you have made a claim. This right may be used as often as reasonably required.

**How can statements made in any application for this insurance be used?**
In the absence of fraud, all statements you made when applying for this in-
surance and providing evidence of insurability are considered representations
and not warranties (absolute guarantees). No statements by you will be used
to reduce or deny a claim unless a copy of your statements has been given
to you.

**Can legal proceedings be started at any time?**
No, you or your authorized representative cannot start any legal action:
1.  until 60 days after proof of claim has been given; nor
2.  more than 3 years after the time proof of claim is required.

**What happens if facts are misstated?**
If relevant facts about you were not accurate:
1.  a fair adjustment of premium will be made; and
2.  the true facts will decide if and in what amount insurance is valid.

**Does this coverage affect workers' or workmen's compensation?**
The policy is not in lieu of, and does not affect, any requirement for coverage
by workers' or workmen's compensation insurance.

EXHIBIT B

 **UNUM**®

**DISABILITY CLAIM** (PLEASE HAVE ALL SECTIONS COMPLETED)
Mail to: Unum, Portland Customer Care Center, P.O. Box 9500, Portland, ME 04104-5058
Claim Questions: 800.858.6843   Fax To: 800.447.2498

**B. CLAIMANT'S STATEMENT** (PLEASE PRINT)

**Type of Coverage** (CHECK ALL THAT APPLY)

☐ Short Term Disability ☑ Long Term Disability ☐ Individual Disability ☐ Waiver of Premium (Life Insurance) ☐ Voluntary Benefits/Payroll Deduction

Policy Numbers: 319040-003    The State in Which You Work: MASS.

**1. Claimant's Name** BARRY S. ZEFF

Home Address (Street, City, State, Zip) 7 SHELDON Rd. MARBLEHEAD, MASS 01945

Home Phone Number (781) 639-4743   Date of Birth 1/30/49   Social Security Number 018 36 2880   ☑ Male ☐ Female

**2. Is this condition due to** ☐ Accident ☑ Sickness?   Is this disability related to your employment? ☐ Yes ☑ No

Describe the injury incurred (what, how, where, when) or the nature and details of the sickness and when it began:

PERICARDITIS — Began 10/01

You have been unable to work because of this condition as of what date? 4/12/02   (978-887-3600)

**3. Employer's Name and Address** SCHT-WAYNE ASSOCS. - 425 Boylston St, Boston, MASS. 02116 (Jeffrey Staffing Group)

Claimant's Work Phone Number (617) 587-3000   Occupational Title Sr. V.P.   List the duties of your occupation at the time of your disability. Duty: Executive Recruiter   # of weekly hours spent at duty: 40-50

Have you returned to work? If yes, When?
Part Time: (NO)   Full Time:
Hours per week:

If you have not returned to work, when do you expect to return?
Part Time: ? Unknown   Full Time:

How does your injury or sickness impede your ability to do your occupational duties? Cannot TALK very LONG → get tired — can't walk much — have constant chest pain. — Can't travel — Stress was a factor

**4. Information about physicians and hospitals**
NOTE: TO AVOID DELAY IN EVALUATING YOUR CLAIM, ADVISE YOUR DOCTOR(S) TO ATTACH COPIES OF MEDICAL RECORDS AND TEST RESULTS.
First medical attention for the current disability was given by (complete below).

Doctor's Name DR. JAMES Rabb   Doctor's Specialty

Address (Street, City, State, Zip) 1101 BEACON St Brookline MASS. 02446   Phone Number (617) 731-6393

Hospital Name Beth Israel Deaconess Hospital   Hospital Phone Number ( )

Address (Street, City, State, Zip) Brookline Ave. Boston, MASS.

Dates of Confinement: From 28 Nov 2001 To: Nov 2001   From: April 2002 To: April 2002

If other doctors or hospitals were consulted in the last five years, please attach a separate sheet of paper.

**5. Marital Status**
☐ Single ☑ Married ☐ Widowed ☐ Divorced   If you are married: Spouse's Name DONNA   Spouse's Date of Birth 5/5/57   Is Spouse Employed? ☑ Yes ☐ No

List your children who are under age 25: (*Please attach additional sheets if necessary).

| Name | Date of Birth | Married? | Attending High School? |
|---|---|---|---|
| Julianne Zeff | 11/7/93 | ☐ Yes ☑ No | ☐ Yes ☑ No |
| Joshua Zeff | 7/12/95 | ☐ Yes ☑ No | ☐ Yes ☑ No |

**6. If you have been approved or denied for any of these benefits, please send a copy of Award or Denial Notification.**
(Check the other income benefits you are receiving or are eligible to receive as a result of your disability and complete the information requested.)

| | | | | |
|---|---|---|---|---|
| Social Security/Retirement ☐ Yes ☑ No | Social Security/Disability ☐ Yes ☑ No | Canada Pension Plan ☐ Yes ☑ No | State Disability ☐ Yes ☑ No |
| Worker's Compensation ☐ Yes ☑ No | Pension/Retirement ☐ Yes ☑ No | Pension/Disability ☐ Yes ☑ No | Unemployment ☐ Yes ☑ No |
| No-Fault Insurance ☐ Yes ☑ No | Short Term Disability ☑ Yes ☐ No – Ins. Co. Name and Policy # | | |
| Other (Include Individual Disability or Group Disability Benefits) | ☐ Yes ☐ No – Ins. Co. Name and Policy # | | |

**7. If your request for benefits is approved, do you want Federal Income Tax Withheld from your check?** ☑ Yes ☐ No
If yes, please indicate dollar amount $ _____   (Note: Minimum withholding is $20.00 per week or $87.00 per month)
Do you want State Income Tax withheld from your check? ☑ Yes ☐ No
If yes, please indicate dollar amount $ _____   (Note: The amount indicated must be a whole dollar increment)

1402-99 (8/00)

DR. Kenneth Lee
1101 Beacon St.
Brookline, mass   617-232-0270
02446



**UNUM®**

**DISABILITY CLAIM** (PLEASE HAVE ALL SECTIONS COMPLETED)
Mail to: Unum, Portland Customer Care Center, P.O. Box 9500, Portland, ME 04104-5058
Claim Questions: 800.858.6843   Fax To: 800.447.2198

## C. EMPLOYMENT STATEMENT (PLEASE PRINT)

**Type of Coverage** (CHECK ALL THAT APPLY)

☐ Short Term Disability  ☒ Long Term Disability  ☐ Individual Disability  ☐ Waiver of Premium (Life Insurance)  ☐ Voluntary Benefits/Payroll Deduction

**1. Employer Name**
Scott-Wayne Associates

**Employer's Phone Number**
( 978 ) 887-3600

**Employer Address (Street, City, State, Zip)**
461 Boston Street, Suite A4/5, Topsfield, MA   01983

**Policy Numbers**
0319040

**Division Number / Class Number**
002/1

**Division / Class Description**

**2. Claimant's Name**
Barry S. Zeff

**Claimant's Address (Street, City, State, Zip)**
Seven Sheldon Road, Marblehead, MA   01945

| Claimant's Home Phone | Date of Birth | Social Security Number | Date of Hire | Effective Date of Insurance | Date Last Worked |
|---|---|---|---|---|---|
| 781-639-4743 | 1-30-1949 | 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 | 11-21-1971 | immediate | 4-30-2002 |

**Claimant's Work Status:** ☒ Full Time  ☐ Part Time  ☐ Exempt  ☐ Non-exempt  ☐ Bargaining  ☐ Non-Bargaining

Has the claimant's employment been terminated?  Yes  ☒ No  If yes, please provide termination date

**General Information About the Claimant's Job**

**3. Job Title**
Vice President

**Minimum education or training required**
n/a

Does the claimant perform supervisory function?  ☐ Yes  ☒ No  If yes, how many people are supervised?

**4. Describe job duties:**

| Duty | # of Week/Hours Spent at Duty |
|---|---|
| Staffing - Recruitment & Placement | 45 |
| Duty | # of Week/Hours Spent at Duty |
| Duty | # of Week/Hours Spent at Duty |
| Duty | # of Week/Hours Spent at Duty |

**Name of Direct Supervisor**
R. Steven Dowlearn

**Telephone Number of Direct Supervisor**
( 617 ) 587-3000

Please attach a copy of the claimant's job description.   n/a

**5. How was claimant paid?** (please check one)
☐ Hourly  ☐ Commissions  ☐ Salaried  ☒ Salary and Bonus  ☐ Commissions Only  ☐ Salary and Commissions

What is the earnings figure you use to compute premium payments for this claimant? $ Ave Monthly Sal/Bonus = $7,500/month

**Salary/Wage prior to date last worked (refer to Earnings definition in your contract)**

| ☐ Weekly  ☐ Bi-Weekly  ☒ Semi-Monthly | Bonuses (per week) | Overtime (per year) | Commissions (per week) | W-2 Earnings |
|---|---|---|---|---|
| $ 2,500 | $ -0- | $ n/a | $ n/a | $ n/a |

**6. Does the claimant contribute toward the premiums?** (Complete all that apply)

| | | | |
|---|---|---|---|
| STD | ☐ Yes  ☒ No  If yes:  ☐ Pre-Tax  ☐ Post-Tax  If Post Tax: | % paid by employer | % paid by claimant |
| State Plans: | ☐ Yes  ☒ No  If yes:  ☐ Pre-Tax  ☐ Post-Tax  If Post Tax: | % paid by employer | % paid by claimant |
| LTD | ☐ Yes  ☒ No  If yes:  ☐ Pre-Tax  ☐ Post-Tax  If Post Tax: | % paid by employer | % paid by claimant |
| IDI | ☐ Yes  ☒ No  If yes:  ☐ Pre-Tax  ☐ Post-Tax  If Post Tax: | % paid by employer | % paid by claimant |
| Life | ☐ Yes  ☒ No  If yes:  ☐ Pre-Tax  ☐ Post-Tax  If Post Tax: | % paid by employer | % paid by claimant |

**7. Year to Date Earnings as of Date of Disability** (For FICA% Deductions) $ 20,000

**8. Financial Documentation** (please refer to your contract for your Earnings definition and attach the appropriate documentation).
Salary Only/Current Earnings definition: Attach copy of payroll records or paystubs for 2 periods just prior to disability.
Bonus/Commissions Included: Attach copy of payroll records for the 12 or 24 months (see definition) just prior to disability.
Other Earnings definitions: Attach referenced document per Earnings definition (W-2, K-1's, Schedule C's, teacher's contract, etc.)

**9. Claimant Pre-Tax Withholdings:** Indicate pre-tax withholdings in effect just prior to disability
401(k)/403(b) ____∅____ %:  Pre-tax medical and other insurance $ ____∅____ /week  Flexible spending account $ ____∅____ /week

1402 29 (8/00)


UNUM.

**DISABILITY CLAIM** (PLEASE HAVE ALL SECTIONS COMPLETED)
Mail to: Unum, Portland Customer Care Center, P.O. Box 9500, Portland, ME 04104-5058
Claim Questions: 800.858.6843   Fax To: 800.447.2498

## C. EMPLOYMENT STATEMENT (continued)

**10.** Date of last Salary/Wage Increase 10/15/0

Work Schedule at time last worked.

| Check off regular work days: | | Sun | X Mon | X Tues | X Wed | X Thurs | X Fri | | Sat. | | Days/Week | | Hours/Day | 45 Hours/Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Date paid through 4/30/2002   For: ☒ Salary Continuation   | | Vacation Pay   | Accrued Sick Pay   | | Other   Number of hours on date last worked.

**11.** Has claimant returned to work?   | | Yes   | X No   If yes, date.   | | Full Time   Part Time   Hours Per Week

**12.** Does the claimant have an ownership interest in this business?   | | Yes   X No   If yes, what is the % of ownership?   %
Type of business entity?   X Regular Corporation   | | S corporation   | | Partnership   | | Sole Proprietorship

**13.** If this is a Flexible Benefits Plan, indicate which option of coverage this claimant has chosen.
Previous Plan Year - Date of Open Enrollment: n/a   Option   Current Plan Year - Date of Open Enrollment:   Option

**14.** Prior LTD Carrier Name

n/a

Address (Street, City, State, Zip)

Effective Date

Termination Date

**15.** Is claimant eligible for:

| | Yes | No | If yes, weekly or monthly amount | Weekly | Monthly | When do benefits begin? | When do benefits end? |
|---|---|---|---|---|---|---|---|
| Salary Continuation | | X | $ | | | | |
| State Disability | | X | $ | | | | |
| Other Disability Benefits | | X | $ | | | | |
| Social Security | | X | $ | | | | |
| Workers' Compensation | | X | $ | | | | |

Is the claim the result of a work related injury or sickness?   Yes   No

| If so has Workers' Compensation claim been filed? | | | If yes, Name and Address of Carrier |
|---|---|---|---|
| Health insurance | | | If yes, Name and Address of Carrier |
| Life insurance | | | If yes, please provide the amount of coverage: $ |

If Workers' Compensation claim has been denied, please submit a copy of denial with this claim.

**16.** If New York DBL or New Jersey TDB applies, complete this question.

Earnings 8 weeks prior to disability

| | Week Ending | | | | | | Week Ending | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mo. | Day | Yr. | No. Days Worked | Amount | | Mo. | Day | Yr. | No. Days Worked | Amount |
| 1 | | | | | | 5 | | | | | |
| 2 | | | | | | 6 | | | | | |
| 3 | | | | | | 7 | | | | | |
| 4 | | | | | | 8 | | | | | |

**17.** Information about your pension plan (Please send copy of Plan Summary) (Do not complete for maternity claim)

Do you have a pension plan?   X Yes   | No   If yes, what type?
| | Defined benefit   | | Defined contribution   X 401(k)/403(b)   | | Profit Sharing   | | Other (specify)

Is claimant eligible for your pension plan?   | | Yes   | No   n/a   If eligible, does the claimant participate?   | | Yes   X No   What % does claimant contribute?

If the claimant is participating, when is he or she eligible for benefits under the plan?

**FRAUD NOTICE:**
Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. This includes Employer and Attending Physician portions of the claim.

The above statements are true and complete to the best of my knowledge and belief.

Name of Person Completing Form   Paul V. Wisniewski

Title of Person Completing Form   Vice President/General Manager

Signature

Telephone Number ( 978 ) 887-3600

Fax Number ( 978 ) 887-6688

Date Signed 10-10-2002

1402-99 (8/00)

 UNUM.

## DISABILITY CLAIM
## CLAIMANT'S AUTHORIZATION
**Mail to:** Unum, Portland Customer Care Center, P.O. Box 9500, Portland, ME 04104-5058
Claim Questions: 800.858.6843   Fax To: 800.447.2498

### FOR CLAIMANT TO COMPLETE

#### CLAIM FRAUD WARNING STATEMENTS

For your protection, the laws of several states, including Alaska, Arizona, Arkansas, Delaware, Idaho, Indiana, Kentucky, Louisiana, Minnesota, New Hampshire, Ohio and Oklahoma, and others require the following statement to appear:

**Fraud Warning**

Any person who knowingly, and with intent to injure, defraud, or deceive an insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of insurance fraud, which is a felony.

**Fraud Warning for California Residents**

For your protection, California law requires the following to appear:

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Fraud Warning for Colorado Residents**

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Fraud Warning for District of Columbia, Maine and Virginia Residents**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purposes of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Fraud Warning for Florida Residents**

Any person who knowingly and with intent to injure, defraud or deceive any insurance company, files a statement of claim or an application containing false, incomplete or misleading information is guilty of a felony of the third degree.

**Fraud Statement for New Jersey, New Mexico and Pennsylvania Residents**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Fraud Statement for New York Residents**

Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

### AUTHORIZATION

I authorize any licensed physician, medical practitioner, hospital, clinic, pharmacy or other medically related facility, insurance company, third party administrator, government organization, employer and any of their agents performing services relating to any employee benefits or workers compensation, other organization, institution, or person that has any records or knowledge of me, my health (including any disorder of the immune system including HIV or AIDS, any information relating to the use of drugs and alcohol, and any information related to mental and physical history, condition, advice or treatment), financial or credit information, earnings, employment history or other insurance benefits, to release this information to any of the UnumProvident Corporation subsidiaries or their duly authorized representatives. I also authorize the UnumProvident Corporation subsidiaries to request a report from the Medical Information Bureau (MIB), and the association of life insurance companies which operates the Health Claims Index (HCI) and the Disability Income Record System (DIRS). I understand that the dates of my past and present claims with any of the UnumProvident Corporation subsidiaries, excluding medical or personal information, may be reported to MIB and that an HCI or DIRS report may reflect this information including the identity of other insurance companies to which I have submitted claims. I further understand that in executing this authorization, information obtained by it will be used for evaluating and administering a claim for benefits.

This authorization is valid for the duration of my claim. I know that I or my authorized representative has a right to request a copy of this authorization. A copy of this authorization shall be as valid as the original.

I further authorize the UnumProvident Corporation subsidiaries or other authorized representatives to release all information (including information pertaining to HIV or AIDS, mental illness, and drug and alcohol abuse) related to this insurance claim to insurance companies, third party administrators, physicians, rehabilitation professionals, vocational evaluators, employers, my insurance agent, and any institution or person on a need to know basis for the purpose of verifying, evaluating, negotiating, or other pertinent uses with respect to my claim for benefits or service.

The statements made by me on this claim are true and complete.

I further authorize the UnumProvident Corporation subsidiaries or its authorized representatives or agents to request reports and information from the Social Security Administration regarding benefits, earnings and employer information, and any award, disallowance or termination relating to benefits.

I am the individual to whom this release/request applies or that person's legal Guardian, Power of Attorney, or Conservator. I know that if I make any representation which I know is false to obtain information from federal records, I could be punished by fine or imprisonment or both.

| | |
|---|---|
| Signature of Claimant | |
| Please Print Name | BARRY S. LEFF |
| Date Signed SEPT, 30 2002 | Social Security Number 018 36 2880 |

I signed on behalf of the claimant, as _____ (indicate relationship). If Power of Attorney, Guardian, or Conservator, please attach a copy of the document granting authority.

1402-99 (8/00)

EXHIBIT C

## ATTENDING PHYSICIAN'S STATEMENT

| 1. PATIENT'S NAME | AGE | HEIGHT | WEIGHT |
|---|---|---|---|
| BARRY ZIFF | 53 | 5'10" | 185. |

2. DIAGNOSIS (if diagnosis code other that ICOA used, give name)

PERIMYOCARDITIS
CHEST PAIN

| 3. IS CONDITION DUE TO INJURY OR SICKNESS ARRISING OUT OF A PATIENT'S EMPLOYMENT? | PREGNANCY? | If yes, EXPECTED DUE DATE |
|---|---|---|
| No | Yes (No) Date: _____ | |

| 4. DATE SYMPTOMS FIRST APPEARED OR ACCIDENT HAPPENED? | 5. DATE PATIENT FIRST CONSULTED YOU FOR THIS CONDITION? |
|---|---|
| 3-29-02 | 11-13-01 |
| | IS PATIENT STILL UNDER YOUR CARE FOR THIS CONDITION? |
| | (Yes) No    DATE RELEASED? |

| 6. HAS PATIENT EVER HAD SAME OR SIMILAR CONDITIONS? (Yes) No (If "Yes" when and describe) | 7. WAS PATIENT HOSPITALIZED FOR THIS DISABILITY? (Yes) No |
|---|---|
| | From: 12-10-01 Thru 12-10-01 |
| | READMITTED 4-21-02. |

| 8. PATIENT WAS CONTINOUSLY TOTALLY DISABLED: (Unable to Work) | 9. PATIENT WAS PARTIALLY DISABLED: |
|---|---|
| From: 4-16-02 Thru present | From: 12-10-02. Thru: 4-16-02. |

| 10. IF STILL DISABLED, DATE PATIENT EXPECTED TO RETURN TO WORK. - | 11. DID ANOTHER PHYSICIAN REFER THE PATIENT? IF SO, GIVE NAME AND ADDRESS. |
|---|---|
| ONGOING DISABLED | DR. JAMES RABB. 1101 BEACON ST    BROOKLINE MA 02446 |

| 12. PHYSICIAN'S NAME (PRINT)    DEGREE    DATE | 15. |
|---|---|
| KENNETH R. RICE | INDIVIDUAL PRACTITIONER'S - SS _____ |
| | ALL OTHER - EMPLOYER ID _____ |

| 13. PHYSICIANS SIGNATURE    TELEPHONE | |
|---|---|
| x Kenneth Rice MD, PA  (617) 232-0270 | MUST BE FURNISHED UNDER AUTHORITY OF LAW |

| 14. STREET ADDRESS    CITY OR TOWN | STATE OR PROVIDENCE | ZIP CODE |
|---|---|---|
| 1180 BEACON ST. BROOKLINE MA 02446. | | |

Dis/a/m/form 3/99

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

## CERTIFICATION OF PHYSICIAN OR PRACTITIONER
### (FAMILY AND MEDICAL LEAVE ACT OF 1993)

1. Employee's Name  *BARRY ZEFF*

2. Patient's Name  *BARRY ZEFF*

3. Diagnosis  *Perimyocarditis / pericarditis / severe chest pain*

4. Date Condition Commenced: *3-29-02*  5. Probable Duration of Condition: *ongoing*

6. Regimen of treatment to be prescribed (Indicate number of visits, general nature and duration of treatment, including referral to other provider health services. Include schedule of visits or treatment if it is medically necessary for the employee to be off work on an intermittent basis or to or less than the employee's normal schedule of hours per day or days per week):

   *PT CONTINUES TO HAVE CHEST PAIN AND HAS BEEN REFERRED*
   a. by Physician or Practitioner:  *To specialist Dr Valentine Fuster AT MT Sinai, NY.*
   *4-21-02. Pt presently hospitalized for chest pain.*
   b. By another provider of health services, if referred by Physician or Practitioner:

*If this certification relates to care for the employee's seriously ill family member, skip items 7, 8, and 9 and proceed to items 10 thru 14 on reverse side. Otherwise, continue below.*

**Check Yes or No in the boxes below, as appropriate:**

|  | Yes | No |  |
|---|---|---|---|
| 7. | ☐ | ☑ | Is inpatient hospitalization of the employee required? |
| 8. | ☐ | ☑ | Is employee able to perform work of any kind? (If "no", skip item 9) |
| 9. | ☐ | ☑ | Is employee able to perform the functions of employee's position? (Answer after reviewing statement from employer of essential functions of employee's position, or, if none provided, after discussing with employee) |

15. Signature of Physician or Practitioner:  *Kenneth Tli, MD, FBCC*

16. Date:  *4-22-02*

17. Type of Practice (Field of Specialization, if any):  *CARDIOLOGY*